## Loughlin, Appellant, *v.* Carey.

*Landlord and tenant—Covenant on the part of tenant for repairs—Measure of damages.*

Where a tenant covenants to make repairs and improvements and to complete certain work mentioned, and he fails to perform his covenant, and in consequence the building falls into a dilapidated and untenantable condition, and the landlord is compelled by the building inspectors to put the building in proper condition, the landlord is entitled to recover from the tenant the cost of repairing the injury resulting from the nonperformance of the covenant, and, in addition, the rental value of the building during the period occupied in making repairs.

Argued Oct. 19, 1902. Appeal, No. 28, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 1, Sept. T., 1897, on verdict for plaintiff in case of Henry C. Loughlin, Trustee of Sarah Kopp, Deceased, v. Lawrence J. Carey. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

. Assumpsit for rent and for damages for breach of covenant of a lease. Before BRÉGY, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $36.00. Plaintiff appealed.

*Error assigned* was in directing the jury to return a verdict for the amount of water rent only.

*E. Hunn Hanson*, for appellant.

*Edward W. Kuhlemeier* and *Samuel P. Tull*, for appellee.

OPINION BY W. D. PORTER, J., November 19, 1902:

The plaintiff's action was founded upon the covenants of a written lease. His claim as set forth in the statement was composed of three elements: (1) Rent for the premises for the period of five months at the rate of $50.00 per month; (2) water rent assessed against the premises which the plaintiff had been compelled to pay, and (3) the cost of repairs which it became necessary for the plaintiff to make because of the failure of the lessee, the defendant, to perform his covenant to make certain repairs and improvements upon the premises. The plaintiff introduced evidence tending to establish the several elements of his claim and, the defendant having failed to offer any evidence in contradiction, the court gave a binding instruction in favor of the defendant except as to the claim for water rent. This instruction is now assigned for error.

The term created by the lease commenced on June 1, 1895, at which time the defendant went into possession, and was to continue during the period of five years. On March 1, 1897, the parties were notified by the bureau of building inspection of the city of Philadelphia that the building was unsafe and dangerous; that the front wall on Third street was badly deflected, the floor joist rotted " and shored in cellar very dangerous." The notice required the parties to make the building safe and secure or take it down. The plaintiff notified the defendant to make the necessary repairs, which the latter declined to do and withdrew from the building. The plaintiff then procured a contractor to take down and replace the deflected wall and at the same time and under the provisions of the same contract to make other and very extensive repairs and alterations.

The performance of this work rendered the building untenantable while it was being done and resulted in the loss of several months' rent. The covenant of the lease upon which the plaintiff relied was in these words : " It is expressly agreed that all repairs and improvements shall be made at the expense of the lessee, including the completion of certain work now pending in the cellar." This was, as to the work then in progress, more than a general covenant to repair and improve; the defendant expressly covenanted to complete the work then pending in the cellar. The written lease was silent as to the character and extent of the work then pending in the cellar, and the subject-matter of this covenant was to be determined upon parol evidence. If the defendant failed to perform this covenant he became liable to the plaintiff for any injury directly resulting to the building as a consequence of such neglect. The plaintiff produced evidence which if believed established that at the time the lease was made, McKinney, who was then the tenant of the premises, had taken out certain partitions on the first floor and in the cellar of the building and had placed temporary shoring in the cellar ; McKinney sold out to Carey, the defendant, who then took the lease upon which this action is founded. When McKinney took out the partition on the first floor he put in an iron girder at the top of that story to sustain the weight of the partition between the rooms in the upper stories. There was evidence that the condition of this work was discussed at the time the lease was executed, and that it was then understood and agreed between them that the completion of the work then pending in the cellar involved the putting in of permanent and substantial shoring instead of the temporary construction then in place and the placing of an iron column resting on this permanent shoring and extending to the top of the first floor so as to support the iron girder. The defendant did not perform this covenant and suffered the temporary and insecure shoring to remain in the cellar and the iron beam or girder at the top of the first floor to remain without any column to support it ; this caused the partition wall between the rooms of the upper floors to settle, and pushed out the east wall of the building. It thus appears that the dangerous condition into which the building was brought resulted from the failure of the defendant to keep his covenant. The public authorities having

lawfully intervened and the defendant having vacated the premises and refused to remedy the condition which his neglect had caused, the plaintiff had a right to enter, repair the injury and remove the menace to the public. The measure of damages for the breach of this covenant would be the cost of repairing the injury which had resulted from its nonperformance or negligent performance and, in addition, the rental value of the building during the period occupied in making the repairs. The learned judge of the court below was clearly right in holding that the amount which the plaintiff had paid to his contractor did not constitute the measure of damages in this case, for that contract involved the making of extensive alterations in the building which had no relation whatever to the injury resulting from the failure of the defendant to perform his covenant. The contention of the plaintiff that he was entitled to recover more than the law allowed could not, however, operate to defeat his right to recover under a proper measure of damages. The case was for the jury under proper instructions by the court.

The judgment is reversed and a venire facias de novo awarded.