## Giordano v. Brandywine Mushroom Corporation

*Theodore O. Rogers,* for plaintiff.

*Grawthrope & Greenwood,* for defendant.

KURTZ, J., September 4, 1963.—In August of 1947, defendant offered certain real estate situate in this county for sale at public auction. The property was struck down to plaintiffs, who then signed conditions of sale, which provided, inter alia, as follows:

"2. Brandywine Mushroom Corporation (defendant) will retain the right to occupy the stone barn located upon said premises and the sheds presently attached thereto, and will pay as rental for the use of the same the sum of Three Hundred Dollars ($300.00) a year for a term of one year, and with the right on the part of said Brandywine Mushroom Corporation to renew the Lease for the same at their option from year to year for a period of fifteen (15) years unless it shall give notice to discontinue said Lease ninety (90) days prior to September 15th of any given year."

Title to said premises was conveyed by defendant to plaintiffs in October of 1947, at which time plaintiffs took possession. Defendant thereafter continued to occupy the stone barn.

The conditions of sale further provided:

"5. Brandywine Mushroom Corporation agrees to

keep and maintain said barn in good condition during the term of any Lease of said barn from the purchaser."

In May 1960, while defendant was still occupying the barn, plaintiff brought suit in assumpsit, asserting that, as a result of defendant's use and occupancy of the barn, it had been damaged.

In support of their claim, plaintiffs presented testimony at the trial to the effect that it would now cost upwards of $25,000 to put the barn in that condition in which it had been at the time defendant commenced its occupancy in 1947. Most of the cost so determined was consumed by the demolition of the barn walls and their being rebuilt from the ground up. However, there was other testimony, elicited in response to questions from the trial judge, that if the barn had been properly maintained, it would have had a fair value at the time of institution of suit of $7,500, and that its value on that date in the condition in which it then was, was but $5,000. The trial judge charged that if that testimony was credited, recovery would be limited to $2,500.

The jury returned a verdict for that amount with interest. Plaintiff has now moved for a new trial, claiming that the court's charge as to damages was erroneous. Whether or not such error was committed is the only question now before us.

Plaintiffs admit that the rule as to damages which the trial judge followed is the correct one insofar as it applies to cases sounding in tort: Kosco v. Hachmeister, Inc., 396 Pa. 288, 292 (1959) ; Jones v. Monroe Electric Company, 350 Pa. 539, 544 (1944). However, they contend that a different rule should be applied, i.e., that the cost of repair is the proper measure of damage, where it is claimed that a tenant has breached the requirements of a covenant to repair, even though the cost so determined will exceed the value of the building itself. No direct authority in support of

that proposition has been presented. While it is true the cost of the repairs was enunciated as being the rule in Darlington v. DeWald, 194 Pa. 305, 312 (1900), it does not appear in that case, nor in the more recent cases which follow it, that the costs of repair would have exceeded the value of the building itself. We think that the presence of that additional factor in the case now before us requires that we follow the rule as stated in the cases first cited above.

In the Restatement of Contracts, §329, it is stated that where a right of action for breach exists, compensatory damages will be given for the net amount of the losses caused and gains prevented by defendant's breach in excess of the savings made possible. Comment "a" to that section explains that, in awarding compensatory damages, the effort is made to put the injured party in as good a position as that in which he would have been put by full performance of the contract. Had this defendant fully performed the covenants contained in the conditions of sale, plaintiffs would have had a barn worth $7,500 at the time this suit was started. They would not have had a stone barn worth but $5,000, plus upwards of $25,000 in cash, as plaintiffs contend. In order to put plaintiffs in the position in which they would have been had the covenant been performed, it then becomes necessary to award to them the difference in value between that which they would have had had there been performance and that which they now have without it. That is what the trial judge instructed the jury they might do in this case. We believe no error was committed.

It will be noted also that courts have recognized that the rule of cost of repair will produce overpayment in some cases, and that when that result is produced, another rule will be applied. In Pennsylvania Cement Co. v. Bradley Contracting Co., 11 F. 2d 687, it was noted that to allow the lessor there to recover the cost

of repair would put him in a better position than he would have been had the covenant been performed. For that reason, that rule was not applied. That case also points out that the cost-of-repair rule is used in those cases in which it is applied because it is presumed to measure accurately the added value to the fee. Here, such a presumption cannot be permitted to control the situation in the face of the very definite evidence to the contrary.

Plaintiffs also contend that a new trial ought now to be granted to permit them to call expert testimony as to the value of the barn as it was at the time suit was instituted and as it would have been on that date if the covenant had been fulfilled. Although the record does not so indicate, plaintiffs' brief asserts that they had an expert witness in court at the trial who could have testified on that point but that they did not call him because they were then contending for another measure of damages.

We do not believe that plaintiffs are now entitled to a second opportunity to prove their case after this court has held that they have erroneously conceived the measure of damages to which they are entitled. In advancing this position, they do not seek to correct any error which they allege was committed by this court at trial, but they seek to patch up this case in accordance with the view of the court as expressed in this opinion. It is elementary, we think, that before he can recover, a plaintiff must prove every element of his case including his damages. Once the case is tried, if there is no error on the part of the court, it is finished. Parties may not have another hearing in order to make amends for their own mistakes.

Accordingly, plaintiffs' motion for a new trial must be overruled. A new trial must be denied. It is so ordered.